UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| KATRINA BURNS, | ) | No. CV 08-1112-PLA |
| Plaintiff, | ) | |
| v. | ) | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on February 26, 2008, seeking review of the Commissioner's denial of her application for Supplemental Security Income. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 18, 2008, and May 6, 2008. Pursuant to the Court's Order, the parties filed a Joint Stipulation on October 27, 2008, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on December 30, 1953. [Administrative Record ("AR") at 43-44, 58.] She has a high school education [AR at 264], and no past relevant work experience. [AR at 21, 264.]

On September 13, 2005, plaintiff protectively filed her application for Supplemental Security Income payments, alleging that she has been unable to work since September 1, 1999, due to arthritis, muscle spasms, high blood pressure, gout, asthma, disc and knee problems, pinched nerves, and shortness of breath.[1] [AR at 46, 53, 58-64, 264-67, 270-72.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 46-57.] A hearing was held on September 6, 2007, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 261-75.] A vocational expert also testified. [AR at 273-75.] On September 12, 2007, the ALJ determined that plaintiff was not disabled. [AR at 9-17.] Plaintiff requested review of the hearing decision. [AR at 8.] When the Appeals Council denied plaintiff's request for review on December 20, 2007, the ALJ's decision became the final decision of the Commissioner. [AR at 4-7.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

---

[1] Plaintiff protectively filed a prior application for Supplemental Security Income on July 2, 2002, which was denied on May 21, 2004. [AR at 12, 31-39.] On August 4, 2004, the Appeals Council denied plaintiff's request for review of the May 21, 2004, hearing decision, and the decision became final. [AR at 12.] The ALJ cites Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), for the proposition that the principles of res judicata require an ALJ to adopt the findings from the prior decision unless there is new and material evidence relating to such findings. [AR at 13.] The Court will consider the impact of Chavez on this case in addressing plaintiff's contention below that "[t]he case of Chavez does not preclude plaintiff from her new application on res judicata." Joint Stipulation ("Joint Stip.") at 3.

evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If

the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since September 13, 2005, the date of the application. [AR at 16.] At step two, the ALJ concluded that plaintiff has the following "severe" impairments: hypertension, asthma, morbid obesity and arthralgias. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 16.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[2] to "perform light work[3] with avoidance of working in environments where there are concentrated exposure to dust, fumes, odors, gases and chemicals." [Id.] At step four, the ALJ noted that plaintiff had reported no past relevant work. [AR

---

[2]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[3]    The ALJ determined that plaintiff is able to lift and carry 20 pounds on an occasional basis and 10 pounds on a frequent basis, and stand or walk, and sit for six hours in an eight-hour workday. [AR at 14.]

at 16.] At step five, the ALJ found, based on the vocational expert's testimony and use of Medical-Vocational Rule 202.13 as a framework, that "there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 15-17.] Accordingly, the ALJ determined that plaintiff is not disabled. [AR at 16-17.]

## V.
## THE ALJ'S DECISION

Plaintiff contends that the ALJ improperly: (1) found that the case of Chavez precluded plaintiff from her new application; (2) determined that plaintiff could sustain work activity; (3) considered plaintiff's symptoms and limitations; and (4) relied on the testimony of the vocational expert. Joint Stip. at 3, 6, 11, 19. As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    IMPACT OF THE PRIOR DECISION**

Plaintiff argues that the ALJ improperly found that Chavez applied and that plaintiff's condition had not changed since the previous decision of May 21, 2004. Joint Stip. at 3. Plaintiff asserts that her testimony and the medical records reveal that her pain and limitations had worsened. Joint Stip at 4.

The principles of res judicata apply to administrative decisions; however, the doctrine is not as rigidly applied to administrative proceedings as it is to judicial proceedings. See Chavez, 844 F.2d at 693; see also Gregory v. Bowen, 844 F.2d 664, 666 (9th Cir. 1988). Social Security Acquiescence Ruling 97-4(9), adopting Chavez, applies to cases involving a subsequent disability claim with an unadjudicated period arising under the same title of the Social Security Act as a prior claim on which there has been a final administrative decision that the claimant is not disabled. Acquiescence Ruling 97-4(9). A previous final determination of nondisability creates a presumption of continuing nondisability with respect to any subsequent unadjudicated period of alleged disability. See Lester, 81 F.3d at 827; see also Miller v. Heckler, 770 F.2d 845, 848 (9th Cir. 1985); Lyle v. Secretary of Health and Human Services, 700 F.2d 566, 568-69 (9th Cir. 1983).

However, the presumption may be overcome by a showing of "changed circumstances," such as new and material changes to the claimant's residual functional capacity, age, education, or work experience. See Lester, 81 F.3d at 827-28; see also Chavez, 844 F.2d at 693; Lyle, 700 F.2d at 568 n.2; Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985). In order to show "changed circumstances," the evidence must establish that the claimant suffers from an impairment that indicates a greater disability. See Chavez, 844 F.2d at 693. Accordingly, res judicata does not apply when the claimant raises an issue not considered in the previous decision, such as the existence of a new impairment, or demonstrates an increase in the severity of an impairment, either one of which adversely affects his residual functional capacity. See Lester, 81 F.3d at 827 ("[n]ew or more severe existing impairments that do not adversely affect the claimant's RFC, do not constitute a greater disability."); see also Acquiescence Ruling 97-4(9) ("where the final decision by the ALJ on the prior claim, which found the claimant not disabled, contained findings of the claimant's residual functional capacity, education, and work experience, SSA may not make different findings in adjudicating the subsequent disability claim unless there is new and material evidence relating to the claimant's residual functional capacity, education or work experience").

  In the decision under review here, the ALJ acknowledged the prior decision and noted that the principles of res judicata created a presumption of continuing nondisability following the period previously adjudicated. [AR at 13.] He stated that plaintiff may rebut the presumption by proving "'changed circumstances indicating a greater disability.'" [Id.] The ALJ further noted that he was required to adopt the findings from the prior decision, which included a conclusion that plaintiff retained the ability to perform light exertion work, unless there was new and material evidence relating to such findings. [AR at 13.] The ALJ discussed some of the medical evidence submitted after the previous decision, i.e., certain medical records from the Talbert Medical Group and the emergency room record of October 23, 2005, and considered the findings of the consultative physicians obtained since the prior decision, but concluded that "the evidence shows that the medical findings and circumstances have not changed" since the prior decision of May 21, 2004. [Id.]
/

The record includes medical evidence from Talbert Medical Group of plaintiff's treatment since the prior decision. [See, e.g., AR at 106, 111-30, 164-221, 223-24.] The record also contains evidence that plaintiff was treated in the emergency room at St. Mary Medical Center for acute exacerbation of chronic, low back pain. [AR at 107-09.] The treatment notes from Talbert Medical Group reflect that plaintiff was assessed with, among other things, asthma, low back pain, obesity, degenerative joint disease, arthritis, gout, spinal stenosis, Tietze's disease, chest pain, sciatica, general osteoarthrosis, and lumbago. [AR at 106, 111-14, 117-19, 121-23, 167-68, 170-71, 179-204, 212-14, 223-24, 247-52.] Plaintiff was prescribed medications for the treatment of many of these conditions. [Id.] The treatment notes also reflect requests made by plaintiff's treating physicians for universal back support and a cane for plaintiff based on assessments of low back pain and degenerative joint disease. [AR at 111, 191.] The treatment notes and emergency room record indicate that plaintiff on examination had a decreased range of motion, tenderness over bilateral lumbar paraspinal muscles, mild bilateral CVA tenderness, very limited flexion, extension and rotation of the low back secondary to bilateral lumbar pain, slow gait, crepitus on range of motion, right sacral sciatic tenderness, and knee and hip pain on motion. [AR at 102, 113, 117-19, 121, 168, 186, 202.] X-ray and MRI testing showed that plaintiff had mild degenerative changes of the right knee, minimal dextroscoliosis, minimal degenerative changes along the lumbar spine, spinal stenosis with a narrow caliber thecal sac, small disc protrusion, and degenerative changes with foraminal narrowing. [AR at 247-50.]

The ALJ's blanket conclusion that there was no change since the prior decision is not supported by the evidence. Absent a thorough examination by the ALJ of all the new medical evidence presented by plaintiff in comparison with the evidence considered in the prior decision, the Court cannot conclude that the ALJ properly determined that "the evidence shows that the medical findings and circumstances have not changed" since the prior decision. [AR at 13.] In concluding that plaintiff could do at least light work with postural and environmental restrictions, the ALJ in the prior decision found the following: (1) no x-rays were taken of plaintiff's lumbar spine, left shoulder or knees despite her allegations of pain in those areas; (2) consultative examinations of plaintiff showed that "her extremities had full ranges of motion without any edema,

joint deformity, effusion, warmth or crepitus" and that her gait, hips and knees were normal; (3) a rheumatological evaluation of plaintiff showed full ranges of motion of her joints; and (4) no limitation in plaintiff's ability to ambulate. [AR at 35-36.] Contrary to these findings, the examinations, x-rays, and MRI scan of plaintiff subsequent to the prior decision show that she had mild degenerative changes of the right knee,[4] minimal degenerative changes along the lumbar spine, spinal stenosis, small disc protrusion, degenerative changes with foraminal narrowing, decreased range of motion, slow gait, crepitus on range of motion (left greater than right knee), crepitus on the right knee, knee and hip pain on motion, mildly antalgic gait on the left, tenderness and mild decreased range of motion on both knees, tenderness on range of motion and palpation with a small area of edema, and the need for a cane for ambulation. [AR at 91-92, 102, 113, 117-19, 121, 168, 185, 191, 202, 213, 223.] Further, many of the assessments, including degenerative joint disease, arthritis, spinal stenosis,[5] and sciatica, noted in the new medical evidence indicate that plaintiff's condition deteriorated since the prior decision. See Lester, 81 F.3d at 828 (application of res judicata is precluded when plaintiff alleges an impairment that was not addressed by the ALJ in the prior decision); see also Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) (presumption of nondisability rebutted by evidence that a previous impairment had become increasingly severe, and evidence of diagnosis of a new impairment, either of which could have been a basis for a finding of disability either independently or when aggregated with all of the claimant's pre-existing infirmities); Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173 (9th Cir. 2008) (evaluations presented after a prior nondisability determination necessarily presented new and

---

[4] It is noted that an x-ray of the right knee on February 11, 2002, showed no abnormality [AR at 131]; however, a right knee series on May 19, 2005, showed mild degenerative changes of the right knee. [AR at 129.]

[5] Although plaintiff's spinal stenosis was noted as "stable at this time" in a treatment note dated July 17, 2007, plaintiff was also noted as suffering from arthritis, knee pain exacerbation, and crepitus on range of motion. [AR at 168.] At the hearing on September 6, 2007, plaintiff testified that she used a cane to help her walk because she had back and knee problems. [AR at 266.] The stability of plaintiff's spinal stenosis on this particular occasion does not preclude the possibility that plaintiff's condition worsened based on the negative effects of the other assessments noted in the record.

8

material information not presented to the first ALJ); Schneider v. Commissioner of Social Sec. Admin., 223 F.3d 968 (9th Cir. 2000) (finding changed circumstances to overcome the presumption of nondisability based on changes in test scores and diagnosis). Given that plaintiff provided proof of "changed circumstances," the ALJ's application of the principles of res judicata was incorrect. Thus, the ALJ's ultimate nondisability determination is conclusive only if it is free from legal error or supported by substantial evidence in the record. See Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. As discussed below, it is not.

**B.    RESIDUAL FUNCTIONAL CAPACITY**

Plaintiff contends that the ALJ did not properly evaluate whether she could sustain work activity. Joint Stip. at 6-8. Specifically, plaintiff asserts that the ALJ erred in his determination of plaintiff's RFC. Id.

RFC is an administrative assessment of the extent to which a claimant's medically determinable impairment(s), including any related symptoms, such as pain, may cause limitations or restrictions that may affect his or her capacity to do work-related activities. See Social Security Ruling[6] 96-8p; see also 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). "Ordinarily, RFC is the [claimant's] *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis[.]" SSR 96-8 (emphasis in original). RFC represents the most that an individual can do despite his or her limitations or restrictions. Id. The RFC assessment must be based on all of the relevant medical and other evidence in the case record, such as medical history, medical signs and laboratory findings, the effects of treatment, reports of daily activities, recorded observations, medical source statements, and effects of symptoms. See SSR 96-8p. "The RFC assessment must always consider and address medical source opinions." SSR 96-8p. "Medical opinions are statements from physicians and psychologists or other acceptable

---

[6] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). It is the ALJ's duty to evaluate the medical opinions in the record and to explain the weight given to each medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d); see also Thompson v. Barnhart, 2006 WL 709795, at *13 (E.D. Pa. March 15, 2006) ("'Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.'") (quoting Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981)). The Social Security Administration "will consider the impact of [a claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." See 20 C.F.R. §§ 404.1529(d)(4), 416.929(d)(4); see also SSR 96-8p.

Here, the ALJ's failure to completely consider the medical evidence undercuts his determination of plaintiff's RFC. The ALJ should have discussed all of the relevant findings in the treatment records, and explained the weight he assigned those findings. While the ALJ considered some of the medical evidence, and noted that the medical consultants who reviewed plaintiff's medical records in April 2006, concluded that plaintiff could perform light exertion with postural limitations, the ALJ failed to consider *all* of the medical evidence in concluding that plaintiff can perform light work with avoidance of working in environments where there would be concentrated exposure to dust, fumes, odors, gases or chemicals. As discussed above, the record is replete with evidence from treating medical sources that plaintiff suffered from, among other things, degenerative joint disease, general osteoarthrosis, lumbago, sciatica, low back pain, arthritis, and spinal stenosis. [AR at 106-09, 111-14, 117-19, 121-23, 167-68, 179-204, 212-14, 223-24, 247-52.] These assessments are supported by the treating physicians' findings on examination of plaintiff, including a decreased range of motion, tenderness, limited flexion, extension, and rotation, slow gait, crepitus on range of motion, and knee and hip pain on range of motion. [AR at 102, 113, 117-19, 121, 168, 186, 202.] The requests made by plaintiff's treating physicians for universal back support and a cane for plaintiff also support the assessments, namely low back pain and degenerative joint disease. [AR at 111, 191.] Additionally, x-ray testing of the

lumbosacral spine showed degenerative changes, even though minimal, along the lumbar spine, and a subsequent MRI scan of the lumbar spine showed spinal stenosis, small disc protrusion, and degenerative changes with foraminal narrowing. [AR at 247-50.] The ALJ acknowledged that the medical records confirmed plaintiff's treatment for hypertension, asthma, and gout, but he did not discuss, or offer any reasons to reject, the other conditions for which plaintiff received treatment.[7] Specifically, the limitation of plaintiff's need to use a cane to ambulate resulting from treating physician Dr. Christiana Lee's assessment of degenerative joint disease, was not properly rejected by the ALJ, or included in plaintiff's RFC assessment. Nor did the ALJ offer any reasons for discounting the x-ray and MRI testing, performed at the request of plaintiff's treating physicians, which supported the assessment of Dr. Lee, as well as the other assessments in the medical evidence.

In finding plaintiff not entirely credible, the ALJ determined that plaintiff's use of a cane was not supported by the record. He based this conclusion on consultative examiner Dr. Concepcion A. Enriquez's finding that plaintiff has mildly antalgic gait on the left, but "does not require an assistive device for ambulation at this time." [AR at 14, 92.] However, the ALJ failed to consider the medical evidence submitted after Dr. Enriquez rendered her opinion on December 5, 2005, which indicated that plaintiff's treating physician ordered a cane for plaintiff based on her assessment of degenerative joint disease and plaintiff's subjective need for a cane.[8] [AR at 191.]

---

[7] The ALJ cannot pick and choose from the evidence in order to support his conclusions. See Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability") (citing Switzer v. Heckler, 742 F.2d 382, 385-86 (7th Cir. 1984)); see also Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence"); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.") (citation omitted).

[8] The ALJ's failure in this regard is especially significant in light of the vocational expert's testimony that an individual with the ability to stand or walk, and sit for six hours in an eight-hour day, but who needed a cane when standing or walking, would be unable to perform any light exertion work. [AR at 274.]

Because Dr. Enriquez did not have an opportunity to review the medical evidence as a whole, her opinion is afforded less weight. Generally, more weight is given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) ("[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted). On May 10, 2006, Dr. Christiana Lee -- who treated plaintiff on a regular basis -- noted that plaintiff "needs a cane to assist [with] ambulation at times since she has arthritis and affects at her [right] knee," assessed plaintiff with degenerative joint disease, and submitted a cane request on the basis of her assessment.[9] [AR at 191.] Dr. Lee's cane request was not based only on plaintiff's subjective need, but also on her assessment of degenerative joint disease. In addition, several treating physicians, including Dr. Lee, noted in their objective assessments of plaintiff that she uses a cane to help her ambulate. [AR at 185, 213, 223.] Although Dr. Lee's assessment of degenerative joint disease and cane request, as well as the other

---

[9] In discussing the credibility issue in the Joint Stipulation, defendant argues that "[a]lthough [plaintiff's] physician ordered a cane based on [p]laintiff's complaint that she needed a cane 'at times,'" it was not medically required. Joint Stip. at 17-18. Defendant's contention that Dr. Lee ordered a cane based solely on plaintiff's subjective need for a cane is not fully supported by the record. [AR at 17-18.] Even if Dr. Lee relied in part on plaintiff's statement that she needed a cane, Dr. Lee submitted a cane request based on her assessment of degenerative joint disease, which is supported by the medical evidence in the record. [AR at 114, 191, 202, 223.] Moreover, defendant's contention was not proffered by the ALJ as a rationale for his RFC determination. Indeed, the ALJ in the decision made no specific reference to any of Dr. Lee's treatment notes in determining plaintiff's RFC or in rejecting plaintiff's subjective testimony. As such, defendant's *post hoc* attempt to justify the ALJ's failure to address such evidence is not sufficient to cure the error. See Vista Hill Foundation, Inc. v. Heckler, 767 F.2d 556, 559 (9th Cir. 1985) (a reviewing court may affirm an administrative decision only on grounds articulated by the agency); Barbato v. Commissioner of Social Sec. Admin., 923 F. Supp. 1273, 1276 (C.D. Cal. 1996) (a court may remand if the decision of the ALJ as to a claimant's entitlement to benefits on its face does not adequately explain how a conclusion was reached, even if Social Security Administration can offer proper *post hoc* explanations for such unexplained conclusions).

references in the record to plaintiff's use of a cane for ambulation, lend support to plaintiff's allegations of disabling pain and need for a cane to walk, such evidence was never expressly considered by the ALJ. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information)." SSR 96-9p. Given that there is medical evidence in the record to establish plaintiff's need for a cane to help her ambulate, the ALJ erred by failing to properly consider, or to provide sufficient reasons for rejecting, such evidence in determining plaintiff's RFC.[10] Because the RFC found by the ALJ requires that plaintiff be able to walk or stand for six hours in an eight-hour workday, the necessity of a cane is an issue that must be properly considered by the ALJ.

To the extent the ALJ ignored the treating physicians' references to a cane based on ambiguity as to whether it was medically determined that a cane is necessary, the ALJ had a duty to seek further development of the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen, 80 F.3d at 1288). If evidence from the medical source is inadequate to determine if the claimant is disabled, an ALJ is required to recontact the medical source, including a treating physician, to determine if additional needed information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from

---

[10] Defendant's contention that the ALJ properly relied on the opinion of nonexamining State Agency physician Dr. B. X. Vaghaiwalla, who indicated that plaintiff could perform light work after a review of the medical records showing that plaintiff experienced sciatica and lumbosacral sprain (Joint Stip. at 8-9), is without merit. The ALJ's reliance on the findings of Dr. Vaghaiwalla, or any nonexamining State Agency physician, to determine plaintiff's RFC, without a proper evaluation of the treatment records, is improper. "The nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinion, and conclusions of an examining [or treating] physician." See Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (the opinion of a nonexamining physician is entitled to "less weight" than the opinion of a treating physician) (citing Gallant, 753 F.2d at 1454); see also Lester, 81 F.3d at 831 (the opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of a treating physician).

your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). As a general rule, the record will be considered "inadequate" or "ambiguous" when a treating source has provided a medical opinion that is not supported by the evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("An ALJ is required to recontact a doctor only if the doctor's report is ambiguous or insufficient for the ALJ to make a disability determination.") (citation omitted); see also Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001). As such, the ALJ should recontact the treating physicians on remand in order to resolve any ambiguities and fully develop the record. See 20 C.F.R. §§ 404.1519a(b)(4), 416.919a(b)(4) (where the medical evidence contains "[a] conflict, inconsistency, ambiguity, or insufficiency," the ALJ should resolve the inconsistency by recontacting the medical source).

In light of the ALJ's failure to properly consider the medical evidence in determining plaintiff's RFC, remand is warranted.

Plaintiff further contends that the ALJ improperly considered plaintiff's subjective testimony and improperly relied on the vocational expert's testimony. Joint Stip. at 11-16, 18-21. As the Court's conclusion that the ALJ failed to properly consider the medical evidence in determining plaintiff's RFC may directly impact on these remaining issues, the ALJ is instructed on remand to thoroughly reexamine the record with respect to these issues as raised by plaintiff in the Joint Stipulation. See SSR 96-8p ("[c]areful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone."); see also Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) (hypothetical questions posed to a vocational expert must set forth all of the limitations and restrictions of a particular claimant).

/

/

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d at 1497. In this case, remand is appropriate to properly consider the medical evidence in determining plaintiff's RFC. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: April 7, 2009

/s/ Paul L. Abrams
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE